## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| PRUDENCE ANESSA MITCHELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:14-cv-01112-TWP-TAB |
| ) | |
| CAROLYN W. COLVIN Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### ENTRY ON JUDICIAL REVIEW

Plaintiff Prudence Anessa Mitchell ("Ms. Mitchell") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). For the reasons below, the Court **AFFIRMS** the decision of the Commissioner.

### I.   BACKGROUND

**A.   Procedural History**

On April 18, 2011, Ms. Mitchell, filed her application for DIB, alleging a disability onset date of September 10, 2010. The Commissioner denied the claim by notice of initial determination dated June 28, 2011, and on reconsideration by notice dated September, 12, 2011. On November 8, 2011, Ms. Mitchell filed a request for a hearing. A hearing was held on September 21, 2012, before Administrative Law Judge Michael Hellman ("the ALJ"). In addition, Mr. Randall L. Harding, an impartial vocational expert, appeared at the hearing and provided testimony. Ms. Mitchell participated in the hearing and was represented by counsel. On November 13, 2012, the ALJ issued a decision denying Ms. Mitchell benefits and a timely appeal was filed on November

26, 2012. On May 1, 2014, the Appeals Council upheld the ALJ's decision and denied Ms. Mitchell's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.

**B.     Factual Background**

Ms. Mitchell was 39 years old at the time of her alleged onset date. She has a 12th grade education. Prior to her alleged onset date of September 10, 2010, Ms. Mitchell had relevant work history as a warehouse worker, real estate agent, night front desk clerk, and a bookkeeper. Her most recent job was a warehouse associate and gift wrapper at Amazon. At the time of her hearing, Ms. Mitchell was single and lived with her four sons, ages 17, 15, 13, and 9. She alleges disability due to lumbar stenosis, radicular syndrome of lower limbs, myofascitis, lumbar spondylosis, obesity, degenerative disc disease, neuro-anatomic distribution of pain, lumber spondylosis with myelopathy and degenerative back disease, 4-6 discs in thoracic lumbar spine impingement, neuropathy, carpal tunnel syndrome, attention deficit disorder ("ADD"), memory loss, depression, post-traumatic stress disorder ("PTSD"), and hidradenitis suppurativa.

Ms. Mitchell complains of back pain. At the time of the incident precipitating her pain, Ms. Mitchell was attempting to pick up a heavy box during her shift at an Amazon warehouse. She heard a pop in her back followed by excruciating pain. Ms. Mitchell complained of decreased trunk rotation and inability to swing her arms and the pain was constant and throbbing and often worsened when she was active or bent forward. An August 2011 MRI of the thoracic spine showed a disc protrusion at T11-T12 on the left side. Dr. Vinayak C. Belamkar, M.D. recommended physical therapy. In October, Dr. Belamkar noted that based upon Ms. Mitchell's complaints and his assessment that she would be able to sit and stand for only 20 minutes at a time but then would

need a break every 15 to 20 minutes for 10 minutes to change positions. Dr. Belamkar noted that the duration of these restrictions will be lifelong.

Ms. Mitchell also experiences carpal tunnel syndrome. An EMG and nerve conduction study, which were done on December 22, 2010, revealed possible mild to moderate right carpal tunnel syndrome. Neurological examinations on November 5, 2010 and April 5, 2011 revealed normal grip strength and normal sensation. Additionally, motor examinations on February 7, 2011 and August 4, 2011 did not reveal any arm drift, weakness, fasciculations, tremor or abnormal tone. Consultative physician Kenny Chuu, M.D. ("Dr. Chuu"),[1] saw Ms. Mitchell on June 15, 2011. On examination, all joints were normal. There was no inflammation or effusion of any joint. Muscle strength and tone were normal. There was no atrophy or muscle spasm. Motor and sensory systems were intact. Grip strength was normal and fine finger skills were normal.

Although Ms. Mitchell's back problems are the bulk of her disability, she also alleges that she suffers from anxiety, depression, ADD, and PTSD. She also claims that the 2010 back injury also exacerbates her mental conditions. Ms. Mitchell states that her mental health deterioration can also be traced back to when she was in an emotionally abusive marriage. In 2011 and 2013 mental health evaluations, Ms. Mitchell admitted feeling depressed, she had little interest in anything, she often felt down, depressed or helpless, and she believed she had failed herself and her family because she could no longer do the things she used to. She often experiences hopelessness, sadness and difficulty sleeping as a result of her increasing depression.

Consultative physician Matthew G. Grant, Psy. D., HSPP ("Dr. Grant") saw Ms. Mitchell on June 14, 2011. Ms. Mitchell denied a history of psychiatric hospitalizations and reported that she had never been prescribed psychotropic medications in the past. On mental status examination,

---

[1] The ALJ and parties inadvertently refer to the consultative physician as Dr. Chain, however the correct name is Dr. Chuu.

3

Dr. Grant concluded that there was no significant evidence of a thought disorder. Based upon the examination and reported history, Ms. Mitchell's memory, impulse control, judgment, and insight were judged to be within normal limits at the time of the evaluation. In October 12, 2011, Ms. Mitchell also saw Dr. Matthew T. Bobzien, M.D. ("Dr. Bobzien") for attention deficit and PTSD. He prescribed Adderall to Ms. Mitchell.

In 2012, Dr. Bobzien wrote a general statement indicating he had treated Ms. Mitchell for over two years and believed she was disabled and unable to work given the severity of her back injuries and in combination with her attention deficit disorder, memory loss and other symptoms. There is no evidence or medical findings completed by Dr. Bobzien. However, there are medical findings and opinions in writing from Dr. Bobzien's Nurse Practitioner, Deanna Stopperich. The nurse practitioner states Ms. Mitchell would never be able to climb, balance, stoop, kneel, crouch, or crawl. Additionally, the nurse practitioner noted Ms. Mitchell cannot bend/twist, kneel, crawl, sit, stand, walk, climb stairs, climb ladders, push/pull, overhead reach, at shoulder reach, below shoulder reach, rotation of head/neck, use hands for repetitive motion, do simple grasping motions or work a forty hour work week.

## II.     DISABILITY AND STANDARD OF REVIEW

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e. one that significantly limits her ability to perform basic work activities) that meets the durational requirement, she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

In order to determine steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or

that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004)

### III. THE ALJ'S DECISION

As an initial matter, the ALJ found that Ms. Mitchell meets the insured status requirements of the Act through December 31, 2015, for purposes of DIB. The ALJ then began the five-step evaluation process. At step one, the ALJ found that Ms. Mitchell had not engaged in substantial gainful activity since September 10, 2010, her alleged onset date. At step two, the ALJ found that Ms. Mitchell had the following severe impairments: thoracic degenerative disc disease and obesity. At step three, the ALJ found that Ms. Mitchell does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded that Ms. Mitchell has the residual functional capacity to perform light work. At step four, the ALJ determined that Ms. Mitchell is capable of performing past relevant work as a real estate agent and gift wrapper, as this work would not require her to perform work-related activities precluded by her RFC. Because the ALJ concluded that Ms. Mitchell could perform her past relevant work as a real estate agent and gift wrapper, he found that Ms. Mitchell was not disabled, and denied her application for DIB.

## IV. DISCUSSION

In her request for judicial review, Ms. Mitchell raises three issues which she claims constitute reversible error. First, Ms. Mitchell argues that the ALJ erroneously ignored an entire line of evidence by failing to discuss one of the major health impairments from which she allegedly suffers: carpal tunnel syndrome. Second, Ms. Mitchell argues that reversal is required because the ALJ failed to give controlling weight to her treating physician, Dr. Bobzien's, opinion. Finally, Ms. Mitchell argues that the ALJ failed to properly consider the severity of her mental health impairments.

**A. The ALJ adequately discusses carpal tunnel syndrome.**

Ms. Mitchell argues that the ALJ failed to properly discuss one of the major health impairments from which she suffers: carpal tunnel syndrome. Specifically, Ms. Mitchell contends the ALJ failed to articulate whether this condition is severe or non-severe, and the rationale behind such finding. However, the ALJ discusses with particularity the carpal tunnel syndrome and its severity. The ALJ states that an EMG and nerve conduction study, that was conducted on December 22, 2010, revealed possible mild to moderate right carpal tunnel syndrome. (Filing No. 12-2, at ECF p. 38). Additionally, the ALJ states that there were neurological examinations on November 5, 2010 and April 5, 2011 that revealed a normal grip strength and normal sensation. (Filing No. 12-2, at ECF p. 38). Ms. Mitchell argues that the ALJ failed to discuss the severity of this medical impairment; however, the ALJ includes in his discussion evidence of examinations on February 7, 2011 and August 4, 2011, where motor examination did not reveal any arm drift, weakness, fasciculation, tremor or abnormal tone. (Filing No. 12-2, at ECF p. 38).

The ALJ also includes reference to an examination done by consultative physician Dr. Chuu in June 2011. On examination, Dr. Chuu found that Ms. Mitchell's grip strength was normal,

fine finger sills were normal and she had the ability to pick up a coin and button a shirt. (Filing No. 12-8 at ECF p. 6). Dr. Chuu stated that all joints were normal, no inflammation or effusion of any joint existed, muscle strength and tone were normal, and there was no atrophy or spasm. (*Id.*) The ALJ noted that motor sensory systems were intact and her grip strength and fine finger skills were normal. (Filing No. 12-2, at ECF p. 38; Filing No. 12-8, at p. 6). Although the word "severe" was not used, the ALJ fully addressed evidence that reveals Ms. Mitchell's carpal tunnel syndrome is not severe. Ms. Mitchell does not cite to any evidence that exists in the record that contradicts these findings, proving her carpal tunnel syndrome was a severe impairment.

Therefore, the ALJ properly discussed Ms. Mitchell's carpal tunnel syndrome and gave proper reasoning as to the decision.

**B.     The ALJ properly considered the treating source opinion of Dr. Bobzien.**

Ms. Mitchell asserts that the ALJ failed to give controlling weight to Dr. Bobzien's opinion, and failed to give references that support his decision to not afford Dr. Bobzien's opinion "any significant weight." (Filing No. 16, at ECF p.12). Ms. Mitchell contends the ALJ erred in not giving controlling weight to Dr. Bobzien, her treating medical doctor for over two years, when he opined in 2012 that she "is disabled and unable to work given the severity of injuries in combination with her ADD, memory loss and other symptoms." (Filing No. 12-9, at ECF p. 12).

Generally, an ALJ must give the medical opinions of a claimant's treating physician controlling weight. "A treating physician's opinion regarding an applicant's physical restrictions is entitled to controlling weight if it is well supported by objective medical evidence and consistent with other substantial evidence in the record." *Gudgel v. Barnhart*, 345 F.3d 467 (7th Cir. 2003) (citing 20 C.F.R. § 404.1527(d)(2); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)). However, a treating physician's opinion is not entitled to any particular weight when it is an

administrative opinion reserved to the Commissioner.  See 20 C.F.R. § 404.1527(d) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner…."). Opinions regarding whether a claimant's impairments meet or equal a listed impairment, the application of vocational factors, the determination of a claimant's RFC, and a determination of disability are all administrative findings that are dispositive of the case, and as such, are reserved to the Commissioner.  20 C.F.R. § 404.1527(d).  A physician's opinions regarding these administrative issues are not considered "medical opinions" as defined in 20 C.F.R. § 404.1527(a).

The ALJ acknowledged Dr. Bobzien's signed statement dated September 20, 2012 of in which he opined that Ms. Mitchell is disabled and unable to work given the severity of her injuries and in combination with her attention deficit disorder, memory loss, and other symptoms.  As stated in the ALJ's decision, "a statement by a medical source that the claimant is 'disabled' or 'unable to work' does not mean that it will be determined that the claimant is disabled.  That determination is reserved for the Commissioner." (Filing No. 12-2, at ECF p. 39).  The ALJ found that Dr. Bobzien needed to support his opinion with medical evidence and reports that he conducted on Ms. Mitchell in order for his opinion to be given "any substantial weight."  All the opinions that Dr. Bobzien relies on to write his statement of determination were derived from his nurse practitioner, Deanna Stopperich.  According to 20 CFR 404.1513, opinions given by nurse practitioners, chiropractors, therapists, etc., are not considered medical sources.  As a result, the ALJ was not required to give substantial weight to Dr. Bobzien's opinion, since he did not write those opinions on his own nor back them up with substantial medical evidence and records.

Ms. Mitchell also argues that the ALJ failed to properly weigh Dr. Bobzien's medical opinion using the mandatory factors set out at 20 CFR 404.1529(d) and 416.927(d).  When an ALJ

9

does not give a treating source's opinion controlling weight, he must consider the following factors: (1) the examining relationship; (2) the treatment relationship; (3) whether the opinion is supported by relevant evidence; (4) consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c). Because Dr. Bobzien did not give an actual "medical opinion," but just a statement of determination, as discussed above, there is no responsibility placed on the ALJ to consider these six factors. Furthermore, the ALJ reviewed and considered Dr. Bobzien's statement within the context of his relationship to Ms. Mitchell, the consistency with his opinion with the record, and the remainder of the evidence to determine if any of the medical findings and other evidence supported the treating physician's statement. (Filing No. 12-2, at ECF p. 39). The ALJ determined that the clinical findings did not support Dr. Bobzien's opinion. Because Dr. Bobzien's findings were not supported and were inconsistent with the medical findings and other evidence, the ALJ was not required to give any significant weight to the statement.

Therefore, the ALJ properly considered the treating source opinion of Dr. Bobzien.

**C.     The ALJ properly considered the severity of Ms. Mitchell's mental health impairments.**

Finally, Ms. Mitchell contends that the ALJ erroneously concluded that her depression and anxiety were non-severe, and that her ADD and PTSD were not medically determinable impairments. Ms. Mitchell asserts that on examination, the consultative examiner made note that her mood was mildly depressed and that her affect was irritable. (Filing No. 16, at ECF p. 13.) Ms. Mitchell links her mental health impairments to her back injury, ADD, PTSD, and her emotionally abusive marriage. (Filing No. 12-7, at ECF p. 110; Filing No. 12-8, at ECF p. 57). An impairment is non-severe only when the impairment is so slight that it has no more than a *de minimous* effect on the ability to perform basic work activities. Social Security Ruling 85-28. "An

10

impairment is not severe if it does not significantly limit your physical or mental abilities to do basic work activities." 20 C.F.R. 404.1521(a) and 416.921(a).

> The ability to do basic work activities is defined as the ability and aptitudes necessary to do most jobs. (citing 404. 1521(b) and 416.921(b).) Such abilities and aptitudes include physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine setting.

*Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). Thus if an impairment only established a slight abnormality or combination of slight abnormalities, the impairment will be found to be non-severe. Social Security Ruling 85-28.

The ALJ first discusses Ms. Mitchell's determinable mental impairments of depression and anxiety and states that these impairments do not cause more than minimal limitations in Ms. Mitchell's ability to perform basic mental work activities, making his determination non-severe. In making this decision, the ALJ discusses the four broad functional areas set out in the disability regulations for evaluating disorders and in section 12.00C of the Listing of Impairments, known as "paragraph B" criteria. In the first functional area, the ALJ discussed Ms. Mitchell's activities of daily living. The ALJ stated Ms. Mitchell has a mild limitation in this functional area. ([Filing No. 12-2, at ECF p. 32](#)). Ms. Mitchell can dust, mop with a self-propelled hard surface floor cleaner, shower or bathe, can cook and use the microwave. ([Filing No. 12-6, at ECF p. 27](#)). The ALJ cited to evidence stating that Ms. Mitchell cannot vacuum, mop without a self-propelled hard surface cleaner, or rake leaves because it is painful. ([Filing No. 12-7, at ECF p. 113](#)). Furthermore, Ms. Mitchell reported she could do laundry; however, she had difficulty bending over when doing laundry or using the dishwasher. ([Filing No. 12-7, at ECF p. 113](#)). The ALJ also stated that Ms. Mitchell can shop for food and clothing. (*Id.*).

11

In the next functional area, social functioning, the ALJ stated that Ms. Mitchell has a mild limitation.  Ms. Mitchell is able to interact independently, appropriately, effectively and on a sustained basis with other individuals.  (Filing No. 12-2, at ECF p. 33).  Ms. Mitchell also testified and reported that she attends her sons' sporting events and talks to her friends on the telephone.  (Filing No. 12-6 at ECF p. 29).  In the third functional area, concentration, persistence or pace, the ALJ stated Ms. Mitchell has a mild limitation.  The ALJ cites to evidence stating Ms. Mitchell finds it difficult to complete her work assignments because she would constantly have to change her position due to her pain.  *Id*.  Ms. Mitchell also stated it is difficult for her to maintain her neck in the proper position in order to view the computer monitor as it also results in pain.  *Id*.  However, the ALJ does find contradicting evidence.

The ALJ cites to evidence which reveals Ms. Mitchell has the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks.  (Filing No. 12-2, at ECF p. 33).  Ms. Mitchell also spends up to three hours a day viewing game footage of one of her sons who plays high school football.  (Filing No. 12-2, at ECF p. 68).  Furthermore, she enjoys scrapbooking, reading her Bible and photography.  (Filing No. 12-7, at ECF p. 112; Filing No. 12-6, at ECF p. 29).  She can count money and change, as well as independently manage her own finances.  (Filing No. 12-7, at ECF p. 114).  Ms. Mitchell has also successfully completed several short-term recall tasks on examination.  (Filing No. 12-7, at ECF p. 112).

In the fourth and final functional area, the ALJ states that there are no episodes of decompensation which have been of extended duration.  (Filing No. 12-2, at ECF p. 34).  The ALJ has accurately gone through the functional areas before rendering a decision.  "The ALJ is not required to mention every piece of evidence but must provide an 'accurate and logical bridge'

between the evidence and the conclusion that the claimant is not disabled." *Craft*, 539 F.3d at 673 (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)). The ALJ discussed at length the medical evidence related to Ms. Mitchell's mental health. After weighing the evidence, the ALJ determined that Ms. Mitchell was not disabled. This process—considering the evidence and then making a determination—is how an ALJ is supposed to proceed.

The ALJ also determined that Ms. Mitchell's alleged PTSD is not severe. The ALJ reviewed a mental status examination conducted by consultative physician Dr. Grant in which Ms. Mitchell's reported history, memory, impulse control, judgment and insight were used to determine her mental status was within normal limits. (Filing No. 12-7, at ECF p. 112). Ms. Mitchell showed no significant evidence of a thought disorder. *Id*. Dr. Grant further states that Ms. Mitchell also admitted she was not "severely depressed." (Filing No. 12-7, at ECF p. 110). The ALJ, therefore, determined that Ms. Mitchell was within normal limits at the time of the evaluation. Furthermore, the ALJ stated Ms. Mitchell denied a history of psychiatric hospitalizations and reported that she had never been prescribed psychotropic medications in the past. (Filing No. 12-7, at ECF p. 111). Moreover, psychiatric evaluations performed on October 29, 2010, January 14, April 5, April 29, and May 25, 2011, and September 4, 2012, Ms. Mitchell's affect was normal and did not show any abnormalities. (Filing No. 12-7, at ECF pp. 43, 45, 48, 53, 64; Filing No. 12-8, at ECF p. 53).

State agency consultant Kenneth Neville, Ph.D., also completed a Psychiatric Review Technique Form dated June 20, 2011, in which he assessed Ms. Mitchell's mental impairments under Listings 12.04, 12.06 and 12.07, and found Ms. Mitchell had a major depressive disorder, recurrent, mild anxiety disorder, NOS and pain disorder associated with psychiatric factor and general medical condition. (Filing No. 12-8 at ECF pp. 13-19). Based on the evidence in the

record, the ALJ determined that Ms. Mitchell only had mild restrictions in activities of daily living, mild difficulties maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. (Filing No. 12-2, at ECF pp. 32-34). As a result, the ALJ found the symptoms alleged by Ms. Mitchell were not credible to the extent they are inconsistent with the RFC assessment given and therefore do not qualify as a disability. The ALJ properly looked to medical opinions and other evidence to come to the conclusion that Ms. Mitchell's PTSD is not severe because it was not a medically determinable impairment.

The ALJ determined that Ms. Mitchell's medically determinable mental impairments do not cause more than minimal limitations and are within normal limits at the time of examination. (Filing No. 12-7 at ECF p.34). Accordingly, this Court finds that the ALJ properly considered the severity of Ms. Mitchell's mental health impairments, including anxiety, depression, ADD and PTSD, when deciding whether she is disabled within the meaning of the Act.

## V.     CONCLUSION

For the reasons set forth above, the Court finds the final decision of the Commissioner is **AFFIRMED**. Ms. Mitchell's appeal is **DISMISSED**.

**SO ORDERED.**

Date: 6/26/2015

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov